UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 16-173-DLB-JGW

HUMANA INSURANCE COMPANY OF KENTUCKY                    PLAINTIFF

vs.                    **MEMORANDUM OPINION AND ORDER**

WHITNEY O'NEAL, et al.                                   DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.     Introduction**

This is an interpleader action by Humana to determine the beneficiary entitled to life insurance proceeds. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, because it arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA").

**II.    Factual and Procedural Background**

Decedent Ted Hamilton ("Decedent") was a participant in the Humana Basic Life Insurance Plan ("the Plan"), an ERISA-regulated employee welfare benefit plan. (Doc. # 1 at ¶ 8). Interpleader Plaintiff Humana Insurance Company of Kentucky ("Humana") administers the Plan. *Id.* At his time of death, Decedent was enrolled for basic life insurance coverage under the Plan. *Id.* at ¶ 9. The Plan provides that participants may name a beneficiary, and that if a beneficiary is not named, Humana can pay the Plan

1

Benefits at its option to the plan participant's surviving spouse or estate.  *Id.* at ¶¶ 12, 13; (Doc. # 28-1 at 10).

On July 16, 2014, Decedent enrolled in the Plan through Humana's on-line platform, and named Whitney O'Neal as the primary beneficiary of the Plan Benefits.  *Id.* at ¶ 15.  On May 14, 2015, Decedent re-enrolled in the Plan through Humana's on-line platform.  *Id.* at ¶ 14.  Decedent did not select a beneficiary for the Plan Benefits during this re-enrollment process.  *Id.* at ¶ 16.

Decedent died on August 5, 2015.  *Id.* at ¶ 18.  Before Humana paid the Plan benefits, it received a letter from Tessa Perkins, dated August 28, 2015, asking that all proceeds be forwarded to Decedent's estate.  *Id.* at ¶ 19.  Subsequently, Humana received a letter from O'Neal dated December 9, 2015, indicating that she intended to "pursue the life insurance policy" of Decedent.  *Id.* at ¶ 20.  O'Neal had completed and signed the Beneficiary Statement on or about November 6, 2015.  *Id.* at ¶ 21.

Based on the facts before it, Humana could not determine whether a court would find that Decedent's July 16, 2014 beneficiary designation naming O'Neal as primary beneficiary remained valid, or whether Decedent's failure to name a beneficiary during his May 14, 2015 re-enrollment voided the designation to O'Neal.  Consequently, believing that it faced exposure to multiple liability, Humana filed this interpleader action pursuant to Federal Rule of Civil Procedure 22, naming O'Neal and Perkins as defendants.  *Id.* at ¶¶ 22-27.  O'Neal filed a cross-claim against Perkins and a counterclaim against Humana.  (Doc. # 6).  O'Neal later voluntarily dismissed her cross-claim against Perkins.  (Doc. # 17).  On December 20, 2016, the Court conducted a status

conference with the parties, and ordered discovery. (Doc. # 18). The matter has now culminated in a Motion for Judgment on the Record by O'Neal (Doc. # 24),[1] Humana's Motion to Dismiss O'Neal's Counterclaim (Doc. # 25), Humana's Motion for Attorney Fees (Doc. # 27), a Motion for Summary Judgment by Perkins (Doc. # 28), and a Motion for Judgment on the Pleadings by O'Neal (Doc. # 33). The various motions have been fully briefed and are now ripe for the Court's review.

## III. Analysis

### A. Standard of Review

The parties have brought a variety of motions, with each requiring a different standard of review. First, the Court will consider Humana's Motion to Dismiss O'Neal's Counterclaim. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] In this motion, O'Neal asks the Court to limit its review to the administrative record; however, because Humana did not deny O'Neal's claim for benefits, no administrative decision exists for the Court to review. Any relevant facts or arguments contained in O'Neal's Motion for Judgment on the Record will be considered as part of her motion for judgment on the pleadings.

3

Next, the Court will consider Perkins's Motion for Summary Judgment in conjunction with O'Neal's Motion for Judgment on the Pleadings.[2] Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Id.* Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

Similarly, a party may move for judgment on the pleadings "[a]fter the pleadings are closed–but early enough not to delay trial." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v.*

---

[2] The Court will consider these motions together because they pertain to the same issue, and both summary judgment and judgment on the pleadings will be granted if no material issue of fact exists.

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal quotation marks omitted). "A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

## B. Humana was not required to exhaust administrative remedies

Defendant O'Neal contends that Humana failed to exhaust its administrative remedies as required under ERISA. (Doc. # 6 at ¶ 7; Doc. # 35 at 4-5). "Although ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action, [the Sixth Circuit has] held that 'the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'" *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2003) (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). "The exhaustion requirement 'enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" *Id.* (quoting *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000)).

The Sixth Circuit has not addressed whether the exhaustion requirement also applies to plan administrators. To the contrary, within the Sixth Circuit, it is not uncommon for plan administrators to bring interpleader actions when faced with exposure to multiple liability, as Humana did here. *See, e.g.*, *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415 (6th Cir. 1997). A few courts, however, have suggested that plan administrators should be required to exhaust administrative remedies before bringing an interpleader action in

5

federal court. *See McLaren Inv. & Retirement Comm. v. Whitehead*, No. 1:08-CV-1178, 2009 WL 2777233 (W.D. Mich. Aug. 28, 2009). O'Neal implores this Court to do the same.

In *McLaren*, as in this case, the Court was asked to determine "which of two claimants [was] entitled to benefits that [were] indisputably owing under an ERISA plan." *Id.* at *2. There, the court endorsed the theory of "reverse exhaustion," and found that where the case required the interpretation of the Plan, and the Plan vested the administrator with discretion to interpret the Plan documents or determine eligibility for benefits, exhaustion should be required. *Id.* at *2-4. This Court need not decide whether to endorse "reverse exhaustion," because even if that theory were recognized, it would not apply in this case.

The *McLaren* Court primarily based its decision on a case from the First Circuit. *See id.* (citing *Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178 (1st Cir. 2006)). In *Forcier*, the decedent had never designated a beneficiary. *Forcier*, 469 F.3d at 181. The policy provision at issue read as follows:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:
>
> 1. spouse; 2. child; 3. parent; 4. brother and sister.
>
> However, we may instead pay all or part of that amount to your estate.
>
> Any payment will discharge our liability for the amount so paid.

*Id.* Thus, the plan administrator had "broad discretion" to make benefits determinations. The First Circuit noted that "MetLife had available to it a perfectly acceptable route … which seemingly, given the plain tenor of the policy language, would have shielded it from liability. For whatever reason, it eschewed the use of that reserved power and chose instead to burden the district court. It is, therefore, entirely possible that, had there been a timely objection, the court might have found interpleader improper and directed that the case be returned to MetLife for an initial benefits determination." *Id.* at 182. Similarly, other courts have noted that "[t]he sound judicial policy that animates the exhaustion doctrine applies with particular force when fiduciaries are *exercising discretion* granted by plan documents." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 281 (3d Cir. 2007) (emphasis added); *see also Life Ins. Co. of N. America v. Nears*, 926 F. Supp. 86 (W.D. La. 1996) (denying interpleader where "the insurer ha[d] clearly contracted for the discretion to exercise its own judgment").

The instant case presents a clear distinction. Humana does not have discretion to determine how to distribute the Plan benefits. If O'Neal is the designated beneficiary, she will, without question, be entitled to the benefits. If a beneficiary has not been designated, Decedent's estate will be entitled to the benefits. Humana does not have the discretion to choose whether or not there is a designated beneficiary – either there is or there is not – and once that question is resolved, Humana will pay the benefits to the appropriate party in accordance with the terms of the Plan. Therefore, because this is not a case in which the insurer has "punted" its decision-making authority to the Court, but instead

faces the real threat of multiple liability, reverse exhaustion is neither appropriate nor necessary.

### C. O'Neal's Counterclaim against Humana should be dismissed

In her Counterclaim against Humana, O'Neal claims that Humana breached its fiduciary duty to administer the Plan benefits in accordance with the terms of the Plan and by failing to answer her questions. (Doc. # 6 at ¶¶ 10, 11). Humana claims that, as an interpleader, it is shielded from liability. (Doc. # 25 at 2). O'Neal contests this defense. But regardless of whether Humana is shielded from liability for breaching its fiduciary duties, O'Neal's claims fail, because Humana has not breached its duties.

First, O'Neal claims that Humana breached its fiduciary duty because it has "not exercis[ed] its obligations under 29 U.S.C. § 1104(a)(1)(A) to administer the ERISA benefits solely for the benefit of the ERISA beneficiary, Defendant O'Neal" and is "in breach of its fiduciary duty under 29 U.S.C. § 1104(a)(1)(D) to administer the benefits according to the terms of the Plan." (Doc. # 6 at 8, ¶¶ 9-10). O'Neal's claims presuppose that O'Neal is, without a doubt, the designated beneficiary. This assumption misses the point of the pending litigation. Humana faces a dispute concerning whether there is a designated beneficiary, and seeks to have the Court resolve this dispute through the present action. Until Humana knows which party is entitled to the Plan benefits, it is under no obligation to pay those benefits to either party. Moreover, Humana has deposited the benefits at issue into the Court registry. (Doc. # 21). Thus, there is no question that when the time comes, Humana will administer the benefits in accordance with the terms of the Plan.

8

Next, O'Neal claims that Humana breached its fiduciary duties by "failing to answer good and legitimate questions raised by O'Neal in her attempts to have the benefit claim paid as demonstrated in the questions raised by Defendant O'Neal *inter alia* in Exhibits 17-18 and 135-137." (Doc. # 6 at ¶ 11). A review of O'Neal's exhibits reveal that this allegation is without merit.

At O'Neal's Exhibit page 17 is a letter from O'Neal's Counsel to the Humana Claims Department, in which Counsel requests that Humana "clarify as to whether this is a denial of payment to Ms. O'Neal," and if so, to provide additional information concerning the determination and review process. (Doc. # 6-1 at 17). Contrary to O'Neal's assertion, Humana did respond to this question. In a letter dated March 25, 2016, counsel for Humana wrote to counsel for O'Neal stating that "Humana has not issued any denial of payment of the subject life insurance benefits." *Id.* at 22. The letter went on to explain the details of the competing claims to the benefits, and advising that "[a]bsent an agreement as between the competing claimants, an interpleader action is the mechanism by which Humana can avoid multiple exposure." *Id.* at 22-23. This more than satisfies any duty Humana was under to answer O'Neal's questions.

Similarly, Humana did not breach any duty with respect to the "questions" O'Neal raised in a letter found at Exhibit pages 135-137. The referenced letter is merely another instance of O'Neal assuming that she is *per se* entitled to the Plan benefits. *See id.* at 135-37. In the letter, O'Neal's counsel states that he "believe[s] [Humana is] incorrect that there are competing claims." *Id.* This belief is baseless. Both O'Neal and the Estate (through Perkins) claimed they were entitled to the Plan benefits. Therefore, there were

9

competing claims to the benefits. O'Neal's assertion that Humana breached some duty by failing to adequately respond to a statement to the contrary is devoid of any merit. Moreover, Humana had already described the competing claims for benefits in the letter it previously sent to O'Neal. (Doc. # 6-1 at 22-23). Accordingly, O'Neal has failed to state a claim against Humana, and O'Neal's counterclaim against Humana should be dismissed.

### D. Benefits should be distributed to the Decedent's estate

The Court will now consider Perkins's Motion for Summary Judgment and O'Neal's Motion for Judgment on the Pleadings to answer the central question in this matter: who is entitled to the Plan benefits? The Sixth Circuit has held that "ERISA itself supplies the rule of law for determining [a plan] beneficiary." *Marsh*, 119 F.3d at 420. Under the terms of the statute, benefits are to be paid "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Thus, courts must look "no further than the plan documents to determine the beneficiary." *McMillan v. Parrott*, 913 F.2d 310, 312 (6th Cir. 1990); *see also Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996) ("[ERISA] establish[es] a clear mandate that plan administrators follow plan documents to determine the designated beneficiary.").

The relevant part of the Plan provides as follows:

BENEFICIARY FOR BASIC TERM LIFE

The Employee may name any beneficiary he or she chooses. The Employee may also change a named beneficiary at any time by notifying Us in writing or by Electronic submission. The change will be effective on the date the Employee signs/submits the form. If We make a payment

> before receiving the change form, We are released from further liability to the extent of the payment.
>
> If a payment is to be made to two or more beneficiaries but the Employee has not specified the portions payable to each, the payment will be shared equally. If the Employee has not named a beneficiary, or if the beneficiary he or she named is not alive at the Employee's death, the payment will be made, at Our option, to any one or more of the following:
>
> Your legal spouse; or
> Your estate.

(Doc. # 28-1 at 10).

The undisputed facts of this case establish that Decedent did enroll in Humana's Group life insurance plan in 2015. The facts also show that Decedent did not affirmatively select a designated beneficiary when he completed this on-line enrollment. The question, then, is whether the previously designated beneficiary, O'Neal, remains the named beneficiary, or whether Decedent's failure to select a beneficiary has the effect of no beneficiary being named. If no beneficiary is named, the Plan benefits will be distributed to Decedent's estate, since he did not have a surviving spouse.

The Plan itself does not speak to whether plan participants must affirmatively name a beneficiary when they re-enroll each year. But, an examination of other plan documents reveals that participants should affirmatively select a beneficiary during each re-enrollment period. The Enrollment Booklet provides step-by-step instructions for Plan participants to follow as they re-enroll in the Plan each year. (Doc. # 28-2). With respect to Basic Life Insurance, the Enrollment Booklet provides as follows:

- You should also designate beneficiaries for each of your life insurance plans.

11

- You can choose beneficiaries from a drop-down list that's populated with all of your dependents.
- Or you can add beneficiaries by clicking "Add Other" and entering their demographic data.

*Id.* at 14.  Those instructions indicate that a Plan participant should affirmatively select a beneficiary from the drop-down menu, or add a new beneficiary and enter the information for them.  Nowhere do the instructions indicate that beneficiaries named in prior years will automatically remain as the named beneficiaries.  Humana also sent informative emails leading up to the open enrollment period that support this interpretation.  One such email included the following:

> 3. Enrolling in life insurance?  Consider your beneficiaries.
> Whether you're planning to enroll – or re-enroll – in additional life insurance benefits, it's always a good idea to make sure you have the correct beneficiary information in the system.
> …
>
> If you're re-enrolling in these benefits, confirm all information, including pre-populated beneficiary information, is correct and up-to-date.

(Doc. # 28-4 at 2).

In their answers to Defendant Perkins's interrogatories, Humana's Human Resources department explained that "[t]he names of beneficiaries need to be re-entered each year … all dependents and previously identified beneficiaries to the specific benefits are offered to the participant via a drop down box and are visible to the participant for selection."  (Doc. # 28-6 at 8).  This explanation comports with the instructions provided to participants.  In this case, O'Neal would have been listed as a previously identified

12

beneficiary in the drop-down menu. Decedent could have selected O'Neal from the list, but instead, chose not to select any pre-populated beneficiary option.

Decedent's choice was made clear to him before he submitted the on-line enrollment form. Humana has provided screenshots of the screen that Decedent viewed prior to hitting the "Submit & Enroll" button. On the screenshot from Decedent's June 16, 2014 enrollment, in the "Life Coverage" section, "Whitney Oneal [sic] – 100%" is listed under the "Primary Beneficiary" designation. (Doc. # 1-3 at 3). Conversely, on the screenshot from the May 14, 2015 enrollment, no beneficiary is listed under the "Life Coverage" section. (Doc. # 1-2 at 3). Decedent had been instructed to review beneficiary information, and to review all information listed on the final screen before hitting the "Submit & Enroll" button. *See id.* at 1 ("Review all the items you added to your enrollment cart and make any necessary changes."); (Doc. # 28-4 at 2) ("[C]onfirm all information, including pre-populated beneficiary information, is correct and up-to-date."). Decedent affirmatively chose *not* to name a beneficiary for his 2015 Basic Life Insurance coverage. Since Decedent did not name a beneficiary for the 2015 term, his Basic Life benefits are payable to his estate.

### E. Humana is not entitled to attorneys' fees

In an action by a plan participant, beneficiary, or fiduciary, the court, in its discretion, "may allow a reasonable attorney's fee and costs action to either party." 29 U.S.C. § 1132(g)(1); *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). The Court has "broad discretion … in making an award of attorney's fees in an ERISA action." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998). The Sixth Circuit has instructed

13

district courts to consider the following factors in deciding whether to award attorney's fees in an ERISA action:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). No single factor is determinative, and the court must consider each factor before exercising its discretion. *Schwartz*, 160 F.3d at 1119.

First, Humana has not shown that the opposing parties acted in bad faith. Each party had a good-faith belief that they may be entitled to benefits. Next, the opposing party – Defendant Perkins – would have the ability to pay the attorneys' fees from the proceeds of the life insurance benefits. But, the Court notes that fairness cautions against requiring the prevailing party to pay Humana's attorneys' fees out of the benefits that it is rightfully entitled to receive. Third, there is no deterrent effect of an award of attorneys' fees in this situation. Perkins, and Decedent's estate, are entitled to Decedent's Plan benefits under the terms of the Plan. Having to pay attorneys' fees would not deter them from claiming benefits, nor does the Court believe that parties with legitimate claims *should* be deterred from claiming benefits. Fourth, Humana did seek to incur a benefit on the parties through this litigation by insuring that it paid benefits to the rightful beneficiary. However, the Court notes that Humana's interpleader action was primarily for its own

benefit, to avoid exposure to multiple liability.  The relative merits of the parties' positions are less relevant in this case, as Humana did not deny benefits to either party, but merely sought to determine which party was entitled to benefits ahead of making such a denial. Thus, there is no "merit" to Humana's claim because it was a disinterested party.  To the extent that the merits of the parties' claims are relevant, Perkins's claim was ultimately meritorious.  Thus, taken together, the *King* factors weigh against granting the award of fees to Humana.

Furthermore, the Court notes that Humana is a sophisticated business entity that could foresee and plan for interpleader suits.  *See First Trust Corp. v. Bryant*, 410 F.3d 842, 855 (6th Cir. 2005). Several courts have declined to award attorney's fees in interpleader actions in which the expenses incurred by the interpleader are those which occur in the normal course of business.  *See, e.g.*, *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds by bringing an action for interpleader."); *Unum Life Ins. Co. of America v. Kelling*, 170 F. Supp. 2d 792, 795 (M.D. Tenn. 2001) ("Competing claims arise during the normal course of business and the cost of doing such business should not be transferred to the insured."). This Court agrees, and declines to award attorneys' fees to Humana when those expenses are part of its regular cost of doing business.

Defendant O'Neal also requested attorneys' fees. (Doc. # 24 at 9; Doc. # 33 at 1, 18).  For many of the same reasons outline above, O'Neal is not entitled to an award of

15

attorneys' fees. None of the parties acted in bad faith, an award of fees would not have a deterrent effect, and O'Neal's position lacked merit. Therefore, the *King* factors weigh against granting an award of attorneys' fees to O'Neal.

### IV. Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Humana's Motion to Dismiss Plaintiff O'Neal's Counterclaim (Doc. # 25) is **granted**, and O'Neal's Counterclaim is **dismissed with prejudice**;

(2) Defendant Perkins's Motion for Summary Judgment (Doc. # 28) is **granted**, and Judgment is entered in favor of Defendant Perkins;

(3) Defendant O'Neal's Motions for Judgment (Docs. # 24 and 33) are **denied**;

(4) Humana's Motion for Attorneys' Fees (Doc. # 27) is **denied**;

(5) The clerk shall distribute to Defendant Tessa Perkins, as executor of Decedent Ted Hamilton's Estate, the funds that Humana deposited into the Court Registry (Docs. # 18 and 21), plus accrued interest and less the applicable Registry Fees;

(6) This matter is **stricken** from the Court's active docket; and

(7) A Judgment shall be entered contemporaneously herewith.

This 14th day of July, 2017.



Signed By:
*David L. Bunning* DB
United States District Judge